IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHUNDELL L. DICKERSON,            )
                                  )
            Petitioner,            )
                                  )
                                  )
vs.                               )    CASE NO. 3:14-1717
                                  )    JUDGE TRAUGER/KNOWLES
                                  )
DEBRA JOHNSON, Warden,            )
                                  )
            Respondent.            )

# REPORT AND RECOMMENDATION

This Motion is before the Court upon Petitioner's "Motion for Discovery" in this habeas corpus action brought pursuant to 28 U.S.C. § 2254. Docket No. 42. Respondent has filed a Response in Opposition to the Motion. Docket No. 44. Petitioner has filed a Reply to that Response. Docket No. 45.

The Tennessee Court of Criminal Appeals summarized the facts underlying Petitioner's conviction in its opinion on direct appeal as follows:

> This case involved the fatal shooting of Eric Johnson, the victim, in a parking lot outside a "Fashion Force" store in Davidson County where he had shopped with two companions, Stormy Woods and Rhonda Thompson, on October 19, 2003. Fearing that the shooter would return, the victim's companions drove away and left the victim on the pavement. They drove to the home of a friend and called the police to report the shooting.
>
> At trial, the State presented three witnesses who testified that the defendant told them he killed the victim. Terrence Gregory testified that, while they were incarcerated together, the defendant admitted killing the victim. Katrina Frierson, the mother of defendant's two children, testified that the defendant told her that

he shot the victim. Tamara Elliott, the wife of an associate of the
defendant, also testified that the defendant told her he "knocked
off" the victim. Additionally, the State presented evidence that a
spent shell casing found at the murder scene was fired from the
same gun as a spent shall casing found at the home of Mrs.
Frierson after the defendant shot her television during an argument.

*State v. Dickerson*, 2008 WL 2780591 at *1 (Tenn. Crim. App.).

Petitioner's trial occurred in August 2005. While Petitioner was indicted for first degree murder, he was convicted of facilitation of first degree murder. *Dickerson v. State*, 2012 WL 2564376 at *1.

The instant Motion relates to the trial testimony of a Metro Nashville Police Officer, Michael Pyburn. The post-conviction appellate court decision summarized that testimony as follows:

> Officer Michael Pyburn, of the Metro Nashville Police
> Department, examined three projectiles and eight shell casings that
> were recovered from the scene of the shooting. He determined that
> two of the three bullets recovered from the scene were nine
> millimeter bullets that were fired from "an unknown firearm." The
> third bullet was a .45 caliber bullet that was fired from "a second
> unknown firearm." Officer Pyburn testified that seven of the eight
> discharged cartridge cases were Winchester .45 auto cartridge
> cases, and one was a discharged Remington nine millimeter Luger
> cartridge case. He also examined the three projectiles that were
> recovered from the victim's body. One was a nine millimeter
> projectile, which had insufficient markings to determine from what
> firearm it was discharged. The other two were .45 caliber
> projectiles that were fired from the same unknown .45 caliber
> firearm from which the projectiles found at the scene were fired.
> Officer Pyburn also examined the nine millimeter shell casing
> found in Mrs. Frierson's home and determined that it was
> discharged by the same unknown nine millimeter handgun that
> fired the nine millimeter bullets and shell casings found at the
> crime scene. Officer Pyburn testified that "at least two different
> firearms" were fired at the crime scene.

*Dickerson v. State*, 2013 WL 765078 at *3 (Tenn. Crim. App.).

In his Motion, Petitioner states that in April 2008 (approximately 32 months after Petitioner's trial), Officer Pyburn retired from the Metro Police Department in order to avoid a finding of "especially egregious misconduct." Essentially, it came to light that Officer Pyburn's work in a previous case was reviewed and it was determined that he had made a "gross error." Docket No. 42, p. 2. Petitioner alleges that in the previous case, Officer Pyburn had declared two bullets a "match," coming from the same firearm, when in fact they were not even of the same caliber. When Officer Pyburn was confronted, he admitted the error but then tried to cover it up by submitting misleading paperwork and lying. The Metro Police Department investigated the situation and concluded that Officer Pyburn had also likely lied about having had his finding of a "match" confirmed by a second officer, which is a mandatory quality-control procedure. Additionally, Petitioner avers that Officer Pyburn had been "engaging in routine misconduct for some period of time" by ignoring a portion of a standard operating procedure regarding the entry of test results into a computer data base.

In his Second Amended Petition, Petitioner argues that the State violated *Brady v. Maryland,* 373 U.S. 83, 87 (1963) and *Giglio v. United States,* 405 U.S. 150, 153-55 (1972) by "withholding evidence and impeachment material favorable to Dickerson." Docket No. 34, p. 26. Petitioner makes this claim "[o]n information and belief . . . ." *Id*. Petitioner argues in his Amended Petition that Officer Pyburn, "prior to his public exposure in 2008, was routinely ignoring quality control standards and procedures." *Id*., p. 27. Petitioner continues, "*If he was committing this misconduct prior to Dickerson's trial in August 2005,* then the State's failure to disclose that misconduct to the defense would constitute a *Brady* violation even if Pyburn's

3

supervisors were ignorant of his misconduct." *Id*.

Petitioner seeks the following discovery, in order to "complete his investigation of this matter":

> 1. A subpoena to the Metro Nashville Police Department requiring the production of the following within 30 days:
>
>> (a) all records relating to the audit done on Michael Pyburn in 2008, and any previous audits;
>>
>> (b) all records relating to Pyburn's practice of routinely ignoring quality-control standards and procedures, and any other records relating to errors or misconduct in his ballistics work;
>>
>> (c) all records relating to the ballistics examinations that Pyburn did in relation to Dickerson's cases (both the murder case and domestic-violence case), including records showing whether he entered his results in IBIS;
>>
>> (d) all records relating to the ballistics examination case in which Pyburn made the erroneous match;
>>
>> (e) all records relating to MNPD's and Pyburn's participation in the Ruger Ten barrel test.
>
> 2. A subpoena to the Metro Nashville Police Department and/or the Davidson County Court granting Dickerson access to the cases and projectiles examined in his cases in order that he can have them examined by an independent expert.
>
> 3. Depositions of Michael Pyburn and MNPD's Chief Steve Anderson (who wrote the report regarding Pyburn's misconduct).

Docket No. 42, p. 3-4.

Petitioner recognizes that Habeas Rule 6 allows the Court to authorize discovery "for good cause." Rule 6 of the Rules Governing Section 2254 Cases. Petitioner argues that he

merely needs to show, not prove, that there is "reason to believe" that he may prevail if provided discovery. Petitioner argues that he meets this standard for discovery, "because evidence already shows Pyburn was engaging in misconduct routinely." Docket No. 42, p. 5.

Petitioner relies upon *Houston v. Waller*, 2008 WL 2872286 (M.D. Tenn.) (Haynes, J.) *affirmed,* 420 F. App.'x 501 (6th Cir. 2011). In *Houston*, an agent who oversaw the investigation of petitioner and testified at petitioner's trials was stealing cocaine and using it himself, at the time of petitioner's trial. In *Houston*, respondent argued that neither the State agency nor the State prosecutor was aware of their lead case agent's drug use and drug thefts and, thus, *Brady* did not apply. The *Houston* Court noted that the Supreme Court had expressly rejected this argument in *Kyles v. Whitely*, 514 U.S. 419, 438 (1995). The *Houston* Court stated, "The *Brady* requirement of disclosure extends to information 'known only to police investigators and not to the prosecutor.'" 2008 WL 2872286 at *2. The *Houston* Court continued in relevant part:

> Respondent cites without analysis, *United States v. Jones*, 399 [F.3d] 640 (6th Cir. 1999) for the proposition that police misconduct arising after a trial is not a *Brady* violation. Yet, *Jones*, involved a federal prosecution and misconduct of local police. *The Sixth Circuit's ruling was the "the* [exculpatory] *evidence* [sic] *did not exist at the time of trial, it was not Brady material.*" *Id*. at 647. Here, the officer involved in the misconduct was the State's lead case agent for Petitioner's trial and his cocaine use and theft occurred prior to and during Petitioner's investigation and trial. *Jones,* is factually inapposite.

*Id*. (Emphasis added.)

Respondent opposes the instant Motion, arguing that Petitioner has failed to provide factual support to show that the requested materials would result in the disclosure of beneficial information if obtained. Docket No. 44, p. 1. Respondent argues that Petitioner has failed to

5

make any showing that Officer Pyburn was engaged in any misconduct *before or during* Dickerson's trial such that knowledge of the misconduct could have been imputed to the prosecution. *Id*. Respondent argues that "good cause" exists only when "specific allegations before the Court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Id*., p. 2, *citing Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "Generalized statements about the possible or speculative existence of evidence does [*sic*] not constitute 'good cause.'" *Aponte v. McKee,* 2007 WL 734986 at *3 (E.D. Mich.) (citations omitted).

As the Sixth Circuit has stated, good cause is not demonstrated by "bald assertions" or "conclusory allegations." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). The *Stanford* Court also stated:

> Habeas petitioners have no right to automatic discovery. A district court has discretion to grant discovery in a habeas case *upon a fact specific showing of good cause under Rule 6.*

*Id.* at 460 (citations omitted, emphasis added).

The *Stanford* Court also stated, "We will not find that a district court erred by denying a fishing expedition masquerading as discovery." *Id*.

It is readily apparent that Petitioner in the case at bar has not made specific factual allegations to show a possible *Brady* violation. The instant Motion rests entirely upon speculation that Officer Pyburn's actions occurred during or prior to Dickerson's trial. Petitioner simply cannot make the required showing. For example, Petitioner states in his Motion:

> For all Dickerson can tell, Pyburn's gross error *might have predated* Dickerson's case or trial.
> . . .

6

> For all Dickerson can tell, Pyburn's routine misconduct predated Dickerson's case or trial. *If* Pyburn's gross error or misconduct predated Dickerson's case or trial, that fact will be important to Dickerson's *Brady* claim.
>
> . . .
>
> This request is not "overbroad" because Pyburn's gross error *might* predate Dickerson's case or trial, and the nature of the error *might* shed light on a possible error made in Dickerson's case.

Docket No. 45, p. 1, 4 (emphasis added).

For the foregoing reasons, the undersigned recommends that the instant Motion (Docket No. 42) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                        */s/ E. Clifton Knowles*
                                        E. Clifton Knowles
                                        United States Magistrate Judge